1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| DIIJON YOUNG, | ) | Case No. CV 06-6593 DDP(JC) |
| Petitioner, | ) | |
| v. | ) | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| ROBERT A. HOREL, Warden, | ) | |
| Respondent. | ) | |

17      This Report and Recommendation is submitted to the Honorable

18  Dean D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and

19  General Order 05-07 of the United States District Court for the Central District of

20  California.

21  **I.      SUMMARY**

22      On October 11, 2006, Diijon Young ("petitioner"), a state prisoner

23  proceeding *pro se*, filed the original Petition for Writ of Habeas Corpus ("Original

24  Petition" or "OP") in this action.[1]  In the Original Petition, petitioner raised three

25  _____

26      [1]Although the Original Petition is file-stamped October 17, 2006, petitioner appears to
    have signed the Original Petition on October 11, 2006.  Pursuant to the mailbox rule, as set forth
27  in Houston v. Lack, 487 U.S. 266, 271-76, (1988), the date a prisoner provides a federal habeas
    application to prison authorities for mailing is treated as the date of filing for statute of
28                                                                          (continued...)

grounds for relief:  (1) petitioner was denied his right to due process under the state and federal constitutions by virtue of the erroneous calculation by the California Department of Corrections ("CDC") of petitioner's 15-year sentence and his alleged resulting service of an extra four years in custody;[2] (2) the California Court of Appeal's decision erroneously failed adequately to remedy the CDC's miscalculation of his 15-year sentence; and (3) the tolling of his indeterminate life sentence violated his right to due process under the state and federal constitutions, as well as under the California Penal Code ("P.C.") and state case law.  (OP at 5-6a).

On January 22, 2007, respondent filed a Motion to Dismiss the Petition ("Motion") with exhibits, arguing that the Original Petition was untimely and contained claims not cognizable on federal habeas corpus review.  On September 24, 2007, the Court denied the Motion without prejudice to the extent it sought dismissal on the ground of untimeliness, but granted the Motion to the extent it sought dismissal of non-cognizable state law claims and afforded petitioner leave to amend.[3]

On December 4, 2007, petitioner filed the operative First Amended Petition for Writ of Habeas Corpus ("First Amended Petition" or "FAP"), raising the following three grounds for relief:  (1) the CDC violated his Fourteenth

---

[1](...continued)
limitations purposes.  Consequently, this Court treats October 11, 2006, the earliest date on which petitioner could have provided the Original Petition to prison authorities for mailing, as the constructive filing date.

[2]Effective July 1, 2005, the CDC was abolished and replaced with the California Department of Corrections and Rehabilitation, which succeeded to all of the CDC's powers and duties.  Cal. Gov't Code §§ 12838(a), 12838.5.  Both entities will be referred to as the CDC.

[3]More specifically, the Court ruled that portions of petitioner's first and third claim and the entirety of petitioner's second claim in the Original Petition alleged non-cognizable violations of the California State Constitution and/or California state law.

Amendment right to due process of law when it arbitrarily, capriciously, and erroneously concluded his 15-year determinate sentence was a 19-year determinate sentence ("Ground One"); (2) the California Court of Appeal failed to address the four additional years that were arbitrarily and capriciously added to petitioner's sentence ("Ground Two"); and (3) "the arbitrary and capricious interruption . . . [of petitioner's] indeterminate life sentence violated his procedural due process rights" under state and federal law ("Ground Three").  (FAP at 5-6A).  On December 12, 2007, the Court determined that Ground Two and the portion of Ground Three alleging state law violations were not cognizable on federal habeas corpus review, and petitioner subsequently elected to proceed on only Ground One and the portion of Ground Three alleging a federal constitutional violation. (Docket Nos. 22-24).

On March 17, 2008, respondent filed an Answer and a supporting memorandum ("Answer").[4]  On May 8, 2008, petitioner filed a Traverse.

For the reasons stated below, the First Amended Petition should be denied, and this action should be dismissed.

II.    BACKGROUND

On March 25, 1980, in Case No. A446926, a Los Angeles County Superior Court ("LASC") jury convicted petitioner of kidnapping to commit robbery (count 1), robbery (count 2) and rape (count 3) (the "LASC Case").  (MTD Ex. 1).  The jury also found true allegations that petitioner had personally used a deadly or dangerous weapon, had inflicted great bodily injury in the commission of the charged offenses, and had served a prior prison term.  (MTD Ex. 1).  Petitioner was sentenced to an indeterminate life sentence plus 15 years in state prison. (MTD Exs. 1, 9).

_____

[4]Respondent also relies upon exhibits attached to respondent's Motion ("MTD Ex."), the declaration of respondent's counsel Kim Aarons, which is attached to the Answer, and a document lodged on March 28, 2008 ("Lodged Doc. 1").

3

On June 28, 1984, while petitioner was in prison and serving his sentence in the LASC Case, a Marin County Superior Court ("MCSC") jury convicted petitioner of false imprisonment, rape, oral copulation and assault with a deadly weapon in Case No. 8844SQ (the "MCSC Case").  (MTD Ex. 2).  On August 13, 1984, the court in the MCSC Case sentenced petitioner to 27 years in state prison, consecutive to the sentence in the LASC Case.  (MTD Ex. 2).

On January 9, 2000, petitioner filed an administrative appeal with the CDC alleging the CDC had erroneously documented his 15-year determinate sentence in the LASC Case as 19 years, and then illegally suspended his life term in the LASC case (which he contended began on December 6, 1991), pending the completion of the 27-year consecutive sentence imposed in the  MCSC case.  (MTD Ex. 3).  On December 18, 2001, petitioner's administrative appeal was denied at the final Director's Level of review.  (MTD Ex. 4).[5]

On March 11, 2002, petitioner sought habeas corpus relief in the LASC,[6] which denied the petition on September 19, 2003, concluding the CDC's computation was correct.  (MTD Exs. 5-7).  On November 9, 2003, petitioner sought habeas corpus relief in the California Court of Appeal, which, on December 10, 2003, issued a reasoned decision granting the petition to the extent

---

[5]The CDC read the two-page judgment in the LASC Case as calling for a life plus 19-year sentence.  (MTD Ex. 4).  More specifically, the CDC read the LASC judgment to call for a life sentence plus four years (1 year for the weapon use enhancement plus 3 years for the great bodily injury enhancement) on the kidnapping to commit robbery charge, and an *additional* total sentence of 15 years on the rape charge (8 years, plus 1 year for the weapon use enhancement, plus 3 years for the great bodily injury enhancement, plus 3 years based upon petitioner's service of a prior prison term).  (MTD Exs. 1, 4).  The CDC further took the position that the alleged 19-year determinate sentence in the LASC Case and the consecutive 27-year determinate sentence in the MCSC case had to be completed before petitioner's indeterminate life sentence would commence.  (MTD Ex. 4).

[6]The LASC petition was initially filed in the Del Norte County Superior Court, but was subsequently transferred to the LASC.  (MTD Exs. 5-6).

4

it sought "an order declaring the term imposed in superior court in case No. A446926 is life plus 15 years in state prison," but denying the petition in all other respects.  (MTD Exs. 8-9).  In particular, the California Court of Appeal held petitioner "must serve the determinate portion of all terms imposed before he commences the indeterminate term."  (MTD Ex. 9 at 2) (citing P.C. § 669). Finally, on November 15, 2004, petitioner filed a habeas corpus petition in the California Supreme Court, which denied the petition without comment on October 12, 2005.  (MTD Exs. 10-11).

On March 26, 2008, the CDC calculated that petitioner's earliest possible release date on his total determinate sentence of 42 years (the 15-year sentence in the LASC Case, plus the 27-year sentence in the MCSC Case) was May 14, 2009, and the minimum eligible parole date ("MEPD")[7] on his indeterminate life sentence is May 14, 2016, seven years later.  (Lodged Doc. 1).

**III.   STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:  (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of

///

_____

[7]The MEPD is "[t]he earliest date on which . . . [a] life prisoner may legally be released on parole." 15 Cal. Code of Regulations § 2000(b)(67).

5

1  the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[8]

2  However, the state court need not cite or even be aware of the controlling Supreme

3  Court cases, "so long as neither the reasoning nor the result of the state-court

4  decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

5  "[C]learly established Federal law" under section 2254(d)(1) is "the

6  governing legal principle or principles set forth by the Supreme Court at the time

7  the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72

8  (2003).  In the absence of a Supreme Court decision that "squarely addresses the

9  issue" in the case before the state court, Wright v. Van Patten ("Van Patten"), 552

10  U.S. 120, 125 (2008) (per curiam), or establishes an applicable general principle

11  that "clearly extend[s]" to the case before a federal habeas court to the extent

12  required by the Supreme Court in its recent decisions, Van Patten, 552 U.S. at 123;

13  see also Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Carey v. Musladin

14  ("Musladin"), 549 U.S. 70, 76 (2006), a federal habeas court cannot conclude that

15  a state court's adjudication of that issue resulted in a decision contrary to, or an

16  unreasonable application of, clearly established Supreme Court precedent.  Moses

17  v. Payne, 555 F.3d 742, 760 (9th Cir. 2009) (citing Van Patten, 552 U.S. at 126).

18  A state court decision is "contrary to" clearly established federal law if:

19  (1) it applies a rule that contradicts governing Supreme Court law; or (2) it

20  "'confronts a set of facts . . . materially indistinguishable'" from a decision of the

21  Supreme Court but reaches a different result.  See Early, 537 U.S. at 8 (quoting

22  Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

23  Under the "unreasonable application" prong of section 2254(d)(1), a federal

24  court may grant habeas relief if the state court identifies the correct governing

25

26  ───────────────

27  [8]The California Supreme Court's denial of review without comment generally constitutes
an adjudication on the merits of any federal claims, thereby subjecting such claims to review in
federal habeas proceedings.  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011); Hunter v.

28  Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992), cert. denied, 510 U.S. 887 (1993).

1   legal principle from the Supreme Court's decisions but unreasonably applies that

2   principle to the facts of the petitioner's case.  <u>Williams</u>, 529 U.S. at 413.

3   　　　"In order for a federal court to find a state court's application of [Supreme

4   Court] precedent 'unreasonable,' the state court's decision must have been more

5   than incorrect or erroneous."  <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003)

6   (citation omitted).  "The state court's application must have been 'objectively

7   unreasonable.'"  <u>Id.</u> at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331

8   F.3d 1062, 1068 (9th Cir.) (under "unreasonable application" clause, federal

9   habeas court may not issue writ simply because it concludes in its independent

10   judgment that relevant state court decision applied clearly established law

11   erroneously or incorrectly; rather, application must be objectively unreasonable),

12   <u>cert. denied</u>, 540 U.S. 968 (2003).  The habeas petitioner bears the burden of

13   demonstrating the objectively unreasonable nature of the state court decision in

14   light of controlling Supreme Court authority.  <u>Woodford v. Visciotti</u>, 537 U.S. 19,

15   25 (2002) (per curiam).

16   　　　In applying these standards, federal courts look to the last reasoned state

17   court decision.  <u>See</u> <u>Davis v. Grigas</u>, 443 F.3d 1155, 1158 (9th Cir. 2006).  "Where

18   there has been one reasoned state judgment rejecting a federal claim, later

19   unexplained orders upholding that judgment or rejecting the same claim rest upon

20   the same ground."  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>see also</u> <u>Gill v.</u>

21   <u>Ayers</u>, 342 F.3d 911, 917 n.5 (9th Cir. 2003) (federal courts "look through"

22   unexplained rulings of higher state courts to the last reasoned decision).

23   **IV.   DISCUSSION**

24   　　　**A.   Ground One is Moot**

25   　　　"Article III of the Constitution limits federal courts to the adjudication of

26   actual, ongoing controversies between litigants."  <u>Deakins v. Monaghan</u>, 484 U.S.

27   193, 199 (1988); <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975); <u>DeFunis v.</u>

28   <u>Odegaard</u>, 416 U.S. 312, 316 (1974) (per curiam).  "[F]ederal courts may not 'give

7

1   opinions upon moot questions or abstract propositions.'" <u>Calderon v. Moore</u>, 518

2   U.S. 149, 150 (1996) (per curiam) (quoting <u>Mills v. Green</u>, 159 U.S. 651, 653

3   (1895)).  "This means that, throughout the litigation, the [petitioner] 'must have

4   suffered, or be threatened with, an actual injury traceable to the [respondent] and

5   likely to be redressed by a favorable judicial decision.'" <u>Spencer v. Kemna</u>, 523

6   U.S. 1, 7 (1998) (quoting <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477

7   (1990)); <u>see also</u> <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982) (per curiam) ("In

8   general, a case becomes moot when the issues presented are no longer live or the

9   parties lack a legally cognizable interest in the outcome.") (citations and internal

10  quotation marks omitted).  Mootness is a threshold jurisdictional issue, <u>St. Paul</u>

11  <u>Fire & Marine Ins. Co. v. Barry</u>, 438 U.S. 531, 537 (1978); <u>North Carolina v. Rice</u>,

12  404 U.S. 244, 246 (1971) (per curiam); <u>United States v. Strong</u>, 489 F.3d 1055,

13  1059 (9th Cir. 2007), <u>cert. denied</u>, 552 U.S. 1188 (2008), and this Court has "'an

14  independent obligation to consider mootness *sua sponte*.'" <u>NASD Dispute</u>

15  <u>Resolution, Inc. v. Judicial Council of State of Cal.</u>, 488 F.3d 1065, 1068 (9th Cir.

16  2007) (quoting <u>In re Burrell</u>, 415 F.3d 994, 997 (9th Cir. 2005)).

17       "[T]he essence of habeas corpus is an attack by a person in custody upon the

18  legality of that custody, and . . . the traditional function of the writ is to secure

19  release from illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973);

20  <u>Burnett v. Lampert</u>, 432 F.3d 996, 999 (9th Cir. 2005); <u>see also</u> <u>Heck v.</u>

21  <u>Humphrey</u>, 512 U.S. 477, 481 (1984) ("[H]abeas corpus is the exclusive remedy

22  for a state prisoner who challenges the fact or duration of his confinement and

23  seeks immediate or speedier release. . . .").  In Ground One, petitioner contends

24  the CDC deprived him of due process of law when it arbitrarily, capriciously, and

25  erroneously concluded his 15-year determinate sentence was a 19-year determinate

26  sentence.  (FAP at 5-5A).  Petitioner raised this claim before the California Court

27  of Appeal, which agreed, granting petitioner's habeas corpus petition in part and

28  ordering the CDC to set the term imposed in the LASC "at life plus 15 years."

1  (MTD Ex. 9).  The CDC then recalculated petitioner's sentence in accordance with

2  the California Court of Appeal's decision, based on petitioner's total determinate

3  sentence of 42 years (the 15-year sentence in the LASC Case, plus the 27-year

4  sentence in the MCSC Case) and his indeterminate life sentence in the LASC case.

5  (Lodged Doc. 1).  Thus, since the CDC's erroneous reading of the determinate

6  portion of petitioner's LASC sentence has already been corrected to 15 years, as

7  petitioner requested, Ground One is moot.  Burnett, 432 F.3d at 1000-01; Cumbo

8  v. Eyman, 409 F.2d 400, 400 (9th Cir. 1969) (per curiam).

9      Petitioner argues the CDC's error required him to serve four extra years on

10  the determinate portion of his LASC sentence, and the California Court of

11  Appeal's decision did not correct this error.  (Traverse at 4).  If true, then Ground

12  One would not be moot.  However, petitioner's argument is specious.  When the

13  CDC corrected its sentencing calculation, any "extra" time petitioner allegedly

14  served on the determinate portion of his LASC sentence was credited against his

15  determinate MCSC sentence.  Petitioner has served no extra time in prison, and

16  Ground One is moot.[9]  Burnett, 432 F.3d at 1000-01; Cumbo, 409 F.2d at 400.

17      **B.      The First Amended Petition is Untimely**[10]

18      The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

19  "established a one-year period of limitations for federal habeas petitions filed by

20  ///

21

22      [9]Even if not moot, Ground One is untimely and without merit for the reasons discussed
below.

23

24      [10]In its September 24, 2007 Order, the Court declined to address the timeliness issue in
large part because it was unclear when petitioner received notice of the final administrative

25  decision, but denied respondent's Motion without prejudice to respondent raising a statute of
limitations defense in his Answer.  (Docket No. 18).  Since the Answer raises such a defense

26  (Answer at 3), and as it is clear that the First Amended Petition is untimely even if it is assumed
the statute of limitations did not commence until petitioner filed his initial state habeas petition –

27  at which time petitioner demonstrably had notice of the final administrative decision – the Court

28  addresses the statute of limitations issue as well as the merits of the First Amended Petition.

state prisoners," <u>Bryant v. Arizona Attorney Gen.</u>, 499 F.3d 1056, 1059 (9th Cir. 2007), as follows:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The AEDPA's statute of limitations applies to challenges to state administrative decisions.  <u>Redd v. McGrath</u>, 343 F.3d 1077, 1079 (9th Cir. 2003);

10

1   see also Shelby v. Bartlett, 391 F.3d 1061, 1065 (9th Cir. 2004) ("[Section] 2244's

2   one-year limitation period applies to all habeas petitions filed by persons in

3   'custody pursuant to the judgment of a State court,' even if the petition challenges

4   an administrative decision rather than a state court judgment." (citation omitted)).

5   "[F]or prisoners challenging administrative decisions. . . , AEDPA's statute of

6   limitations begins running under § 2244(d)(1)(D) on the date the administrative

7   decision became final." Redd, 343 F.3d at 1084 (citations omitted); Shelby, 391

8   F.3d at 1066.

9        Here, the CDC's administrative decision became final when petitioner's

10   administrative appeal was denied at the third or Director's Level on December 18,

11   2001. (MTD Ex. 4). Accordingly, the AEDPA's statute of limitations ordinarily

12   would have begun to run the next day, December 19, 2001, and expired one year

13   later on December 18, 2002. Yet, as this Court previously noted, it is unclear from

14   the record exactly when petitioner received notice of the final decision. (Docket

15   No. 18). Petitioner, however, certainly had notice of this decision no later than

16   March 11, 2002, the date he filed his LASC habeas corpus petition, as he attached

17   the Director's Level decision to the LASC petition. (MTD Ex. 5 at Ex. C).

18   Therefore, for purposes of this decision only, the Court will assume arguendo that

19   the statute of limitations commenced on March 11, 2002, Cf. Ramirez v. Yates,

20   571 F.3d 993, 997 (9th Cir. 2009); Bryant, 499 F.3d at 1060, and expired one year

21   later on March 10, 2003. Since the Original Petition commencing this action was

22   not constructively filed until October 11, 2006, over three-and-a-half years later, it

23   is facially untimely.

24        However, this Court must consider whether the limitations period was

25   statutorily tolled while petitioner's applications for collateral relief were pending

26   in the California courts. Generally, "the statute of limitations is tolled from the

27   time the first state habeas petition is filed until the California Supreme Court

28   rejects the petitioner's final collateral challenge[,]" Nino v. Galaza, 183 F.3d 1003,

11

1006 (9th Cir. 1999) (footnotes omitted), <u>cert. denied</u>, 529 U.S. 1104 (2000), so

long as the petitioner did not unreasonably delay in seeking collateral relief.

<u>Carey v. Saffold</u>, 536 U.S. 214, 225 (2002).  Here, petitioner filed his first state

habeas corpus petition in the LASC effective March 11, 2002, and it was denied

September 19, 2003.  Therefore, as of September 19, 2003, petitioner had the full

one year remaining on the limitations period in which to file a federal habeas

petition.

      "Typically, a California petitioner brings a petition for a writ of habeas

corpus in the state's Superior Court.  If it is denied, the petitioner will assert

claims, most commonly the same ones, in a new petition in the California Court of

Appeal.  If the Court of Appeal denies the petition, he will assert claims in yet

another new petition in, or petition for review by, the California Supreme Court."

<u>Biggs v. Duncan</u>, 339 F.3d 1045, 1046 (9th Cir. 2003).  Here, after the LASC

denied his habeas corpus petition, petitioner filed a habeas corpus petition in the

California Court of Appeal on November 9, 2003, the California Court of Appeal

partially granted and partially denied the petition on December 10, 2003, and the

decision became final 30 days later, on January 9, 2004.  Former Cal. Rule of

Court, Rule 24(b)(1) (2003).[11]  Thus, as of January 9, 2004, petitioner had the full

one year remaining in which to file a federal habeas corpus petition.[12]

      Petitioner took no further action for over ten months, when he filed a habeas

corpus petition in the California Supreme Court on November 15, 2004.  This

---

[11]Had the California Court of Appeal merely denied the petition without issuing an
alternate writ or an order to show cause, the decision would have been final on filing.  Former
Cal. Rules of Court, Rule 24(b)(2)(A) (2003).

[12]Given this conclusion, the Court need not further consider petitioner's claim that under
Section 2244(d)(1)(D), he is entitled to use the date of the California Court of Appeal's decision,
December 10, 2003, as the date the limitations period commenced since the factual predicate of
his claims changed when the California Court of Appeal issued a partially favorable decision.
(Opposition at 12-13).

delay "is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide" for filing a petition in a higher court, Evans v. Chavis ("Chavis"), 546 U.S. 189, 201 (2006), and petitioner has not explained the reason for this delay.[13]  Thus, petitioner is not entitled to "gap tolling" for the period between January 9, 2004, and November 15, 2004, and the limitations period ran during those 319 days.  Chavis, 546 U.S. at 201; see also Banjo v. Ayers, 614 F.3d 964, 970 (9th Cir. 2010) (Banjo's 146-day delay was not reasonable, "nor is it consistent with the short periods of time permitted by most states and envisioned by the Supreme Court in reaching its decisions in Saffold and Chavis."), pet. for cert. filed, 79 USLW 3377 (Dec. 14, 2010) (No. 10-803); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (per curiam) (petitioner not entitled to statutory tolling for unexplained delays of 101 and 115 days); Waldrip v. Hall, 548 F.3d 729, 738 (9th Cir. 2008) ("Under Evans v. Chavis, the one-year federal limitations period runs - is not tolled - during an unjustified delay of more than six months between the denial of habeas relief by a California state court and the filing of a subsequent petition in a higher California court."), cert. denied, 130 S. Ct. 2415 (2010); Gaston v. Palmer, 447 F.3d 1165, 1167 (9th Cir. 2006) (applying Chavis and concluding petitioner is not entitled to "gap" tolling for unexplained ten-month delay), cert. denied, 549 U.S. 1134 (2007).  Thus, when petitioner filed his habeas corpus petition in the California Supreme Court, he had "used" 319 days of the one-year limitations period, and had only 46 days left in which to timely file his petition.  The California Supreme Court denied petitioner's habeas corpus petition on October 12, 2005, and the statute of limitations resumed running the

---

[13]In setting forth his reasons for delay, petitioner stated only "Department of Corrections reliance on inaccurate court documentation, and misinterpretation governing the tolling of petitioner's life sentence."  (MTD Ex. 10 at 6).  However, this statement provides absolutely no basis for petitioner's delay in filing his habeas corpus petition in the California Supreme Court since petitioner was well aware of the alleged CDC misinterpretation before he filed his habeas corpus petition in the LASC.

next day.  See Former Cal. Rules of Court, Rule 29.4(b)(2)(C) (2005) ("[T]he denial of a petition for a writ within the [California Supreme Court's] original jurisdiction without issuance of an alternative writ or order to show cause" is "final on filing[.]").  However, since petitioner waited one full year until October 11, 2006 to commence this action, the Original Petition was untimely, and accordingly, the operative First Amended Petition is likewise untimely.

Petitioner nevertheless contends he is entitled to calculate the limitations period under Section 2244(d)(1)(B) because, even though inmates were aware of the AEDPA shortly after its enactment, deficiencies in the Pelican Bay law library meant inmates were at a loss as to how the AEDPA applied to them.  (Petitioner's Opposition to Motion to Dismiss ("Opposition") at 2-13).  Section 2244(d)(1)(B) "applies when a petitioner has been impeded from filing a habeas petition." Shannon v. Newland, 410 F.3d 1083, 1088 (9th Cir. 2005) (emphasis in original), cert. denied, 546 U.S. 1171 (2006).  "To obtain relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition."  Bryant, 499 F.3d at 1060; see also Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003) ("In order to invoke § 2244(d)(1)(B), the prisoner must show that:  (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law.").

Initially, petitioner's invocation of Section 2244(d)(1)(B) fails because petitioner has provided no evidentiary support for the claimed law library deficiencies.  Randle v. Crawford, 604 F.3d 1047, 1057 (9th Cir.), cert. denied, 131 S. Ct. 474 (2010); Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998).  Moreover, Section 2244(d)(1)(B) requires that the alleged impediment "be imposed 'in violation of the Constitution or laws of the United States.'"  Shannon, 410 F.3d at 1088 n.4 (quoting 28 U.S.C. § 2244(d)(1)(B)).  Although petitioner complains about "his inability to adequately research his habeas issues utilizing the law library[,]" (Opposition at 11-12), he has not

14

1   identified any specific constitutional or federal right violated by the alleged

2   impairment.  See Ramirez, 571 F.3d at 1001 ("There is no constitutional right to

3   file a timely § 2254 petition[.]").  Of course, a denial of court access due to the

4   unavailability of the AEDPA in a prison's law library could constitute an

5   "impediment."  Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en

6   banc); see also Id. at 1148-49 (Tashima, J., concurring) ("A prisoner acting pro se

7   can be prevented from discovering the most basic procedural rules essential to

8   avoid being summarily thrown out of court, even if the claims alleged in the

9   petition are meritorious, well-drafted, and supported by every pertinent citation

10  entitling him to relief on the merits.  A petitioner's knowledge of the legal basis of

11  his claims is not the same as knowledge of the procedural rules that must be

12  complied with in order to get a hearing on the merits.") (citation omitted); Moore

13  v. Battaglia, 476 F.3d 504, 507-08 (7th Cir. 2007) (remanding for further factual

14  development regarding whether prison's law library was adequate); Egerton v.

15  Cockrell, 334 F.3d 433, 438-39 (5th Cir. 2003) ("[A] state's failure to provide the

16  materials necessary to prisoners to challenge their convictions or confinement, in

17  this case a copy of the very statute that is being used to render [petitioner's]

18  petition time-barred, constitutes an 'impediment' for purposes of invoking

19  § 2244(d)(1)(B).").  Yet, even assuming arguendo petitioner is alleging he was

20  denied his constitutional right to meaningful court access, see Lewis v. Casey, 518

21  U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), petitioner "is

22  entitled to the commencement of a new limitations period under § 2244(d)(1)(B)

23  only if [he was] altogether prevented . . . from presenting his claims in any form,

24  to any court."  Ramirez, 571 F.3d at 1001 (emphasis in original).  Since this Court

25  has assumed the statute of limitations did not begin to run until March 11, 2002,

26  the day petitioner filed his LASC habeas corpus petition, petitioner cannot make

27  this showing, and Section 2244(d)(1)(B) does not entitle him to commence the

28

limitations period any later than March 11, 2002.[14] Ramirez, 571 F.3d at 1001; see also Bryant, 499 F.3d at 1060 (Section 2244(d)(1)(B) inapplicable when petitioner did not establish a causal connection between his alleged lack of access to case law interpreting AEDPA's statute of limitations and his failure to timely file his petition).

Finally, petitioner is not entitled to equitable tolling of AEDPA's statute of limitations.  A habeas petitioner is entitled to equitable tolling "in appropriate cases."  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  The petitioner bears the burden of proving he is entitled to equitable tolling of the statute of limitations by showing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Holland, 130 S. Ct. at 2562; Chaffer, 592 F.3d at 1048.  Additionally, "the prisoner must show that the 'extraordinary circumstances' were the but-for and proximate causes of his untimeliness."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations and internal quotation marks omitted); Ramirez, 571 F.3d at 997.  "'[T]he threshold necessary to trigger equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule.'"  Mendoza v. Carey, 449 F.3d 1065, 1068 (9th Cir. 2006) (citation omitted); United States v.

---

[14]Although petitioner complains of various prison lockdowns, he concedes he was removed from lockdown status in March 2002 (Opposition at 6), and he was able to file a state habeas corpus petition at that time.  (MTD Ex. 5).  Therefore, the alleged lockdowns provide no basis for applying Section 2244(d)(1)(B).  Moreover, petitioner concedes that the law library was getting legal material relating to the AEDPA prior to January 9, 2004, the date the statute of limitations began to run, see Gaston v. Palmer, 417 F.3d 1030, 1035 (9th Cir. 2005), amended by, 447 F.3d 1165 (9th Cir. 2006) (petitioner's claimed lack of access to legal materials in the law library did not constitute a state-created impediment since it occurred before the statute of limitations commenced running), cert. denied, 549 U.S. 1134 (2007); however, he complains these materials were quickly stolen.  (Opposition at 3, 12).  Since such thefts are not an impediment created by "State action[,]" Section 2244(d)(1)(B) is of no benefit to petitioner.  See Finch v. Miller, 491 F.3d 424, 427 (8th Cir. 2007) ("An impediment to filing . . . must be created by state action.") (emphasis in original).

1  Aguirre-Ganceda, 592 F.3d 1043, 1045 (9th Cir.), cert. denied, 130 S. Ct. 3444

2  (2010).

3         To the extent petitioner contends prison lockdowns entitle him to equitable

4  tolling, the claim is without merit since petitioner concedes he was removed from

5  lockdown status and able to access the prison's law library well before the statute

6  of limitations began to run in his case.  (Opposition at 6).

7         Moreover, to the extent petitioner seeks equitable tolling based on limited

8  law library access or deficiencies in the law library during the relevant time period

9  (See Opposition at 6-7 (following his removal from lockdown status in March

10 2002, petitioner "was allowed limited physical access to the law library")), his

11 claim fails, among other reasons, because petitioner has not provided any

12 evidentiary support demonstrating a causal connection between any alleged lack of

13 access or law library deficiencies, and his failure to timely file his federal habeas

14 corpus petition, especially since petitioner was able to timely file several state

15 habeas corpus petitions regarding the issues petitioner raises in the First Amended

16 Petition, including one partially successful state habeas petition.  (MTD Exs. 5-9);

17 Ramirez, 571 F.3d at 998; see also Tucker v. Kingston, 538 F.3d 732, 735 (7th

18 Cir. 2008) ("[A] prisoner's limited access to the prison law library is not grounds

19 for equitable tolling."); Miller, 141 F.3d at 978 (denying equitable tolling when

20 petitioner "provided no specificity regarding the alleged lack of access and the

21 steps he took to diligently pursue his federal claims."); Williams v. Dexter,

22 649 F. Supp. 2d 1055, 1062 (C.D. Cal. 2009) ("[P]etitioner's claim that he is

23 entitled to equitable tolling because he had limited law library access, without

24 supporting evidence and proof that limited access caused him to tardily file in the

25 California Supreme Court, is insufficient to meet his burden" of showing he is

26 entitled to equitable tolling); Ruiz v. Poole, 566 F. Supp. 2d 336, 341 (S.D.N.Y.

27 2008) (petitioner not entitled to equitable tolling for alleged lack of access to law

28 library when petitioner proffered no evidence supporting his claim).

1    Therefore, the First Amended Petition is untimely and should be denied and

2    dismissed as such.

3    **C.    Ground Three Does Not State a Viable Federal Claim**[15]

4    A federal court, in conducting habeas review, is limited to deciding whether

5    a state court decision violates the Constitution, laws or treaties of the United

6    States.  28 U.S.C. § 2254(a); Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (per

7    curiam); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal habeas corpus

8    relief "does not lie for errors of state law[,]" Lewis v. Jeffers, 497 U.S. 764, 780

9    (1990); McGuire, 502 U.S. at 67; see also Dugger v. Adams, 489 U.S. 401, 409

10   (1989) ("[T]he availability of a claim under state law does not of itself establish

11   that a claim was available under the United States Constitution."), and petitioner

12   "may not transform a state-law issue into a federal one merely by asserting a

13   violation of due process."  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.), cert.

14   denied, 522 U.S. 881 (1997).

15   In Ground Three, petitioner contends he was denied due process of law

16   when the CDC "interrupted" petitioner's service of his life sentence in the LASC

17   case so that he could first serve his MCSC determinate sentence.  (FAP at 6-6A).

18   The California Court of Appeal rejected this claim, holding:

19       [Petitioner's] claim that his sentence in the 1982 case must be

20       completed before he commences to serve the term in the 1984 case is

21       without merit.  [Petitioner] must serve the determinate portion of all

22       terms imposed before he commences the indeterminate term.  ([P.C.]

23   ///

24   ///

25   ///

26

27   _____

28   [15]The Court has read, considered and rejected on the merits all of petitioner's remaining
contentions.  The Court discusses petitioner's principal contentions herein.

18

1    § 669.[16]) A contrary result would indefinitely postpone

2    commencement of the term in the 1984 case until [petitioner] had

3    been found suitable for parole in the 1982 case.

4  (MTD Ex. 9 at 2) (footnote added).  Petitioner disagrees, arguing the California

5  Court of Appeal's decision "is without legal merit" because the order in which the

6  CDC has required him to serve his sentences incorrectly interprets "clearly

7  established state law" under P.C. § 1170.1 (FAP at 6A; Traverse at 11), which

8  states, in pertinent part:

9        In the case of any person convicted of one or more felonies

10       committed while the person is confined in a state prison . . . and the

11       law either requires the terms to be served consecutively or the court

12       imposes consecutive terms, the term of imprisonment for all the

13       convictions that the person is required to serve consecutively shall

14       commence from the time the person would otherwise have been

15       released from prison.

16  P.C. § 1170.1(c); see also In re Thompson, 172 Cal. App. 3d 256, 260 (1985) ("In

17  the instant case, petitioner was convicted for felonies committed while confined in

18  a state prison and the court did impose consecutive terms.  Therefore, . . . the

19  correctional authorities are required to hold petitioner until he would otherwise

20  have been released from prison and then commence his consecutive term for the

21  in-prison felonies.").  However, since "[a] federal court may not issue the writ [of

---

16P.C. § 669 provides in pertinent part:

Whenever a person is committed to prison on a life sentence which is ordered to
run consecutive to any determinate term of imprisonment, the determinate term of
imprisonment shall be served first and no part thereof shall be credited toward the
persons' eligibility for parole. . . .

P.C. § 669.

19

1  habeas corpus] on the basis of a perceived error of state law[,]" petitioner's claim

2  does not merit federal habeas relief.[17]  <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>see</u>

3  <u>also</u> <u>Medley</u>, 506 F.3d at 862 ("[A] federal court may not overturn a conviction

4  simply because the state court misinterprets state law.").

5          Petitioner nevertheless argues he is entitled to habeas corpus relief because

6  he has a liberty interest in receiving a correct sentence, citing, among other cases,

7  <u>Ballard v. Estelle</u>, 937 F.2d 453 (9th Cir. 1991) and <u>Wasko v. Vasquez</u>, 820 F.2d

8  1090 (9th Cir. 1987) for the non-controversial proposition that state laws may

9  create liberty interests under the Due Process Clause.  (Traverse at 11); <u>see also</u>

10 <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 371 (1987) ("[S]tate statutes may create

11 liberty interests . . . that are entitled to protection under the Due Process Clause.").

12 Thus, for instance, in <u>Wasko</u>, the Ninth Circuit held an inmate was denied due

13 process of law when the CDC altered Wasko's sentence for an escape conviction

14 from eight months to two years.  <u>See</u> <u>Wasko</u>, 820 F.2d at 1091-93 & n.2 ("Wasko

15 has a protected liberty interest, under the Fourteenth Amendment, against

16 excessive punishment; he may be deprived of his liberty only to the extent

17 authorized by state statute.  Since Wasko has a liberty interest in the correct

18 sentence of eight months, it was a due process violation to order him to a full

19 two-year term." (citations omitted).)  Petitioner cannot demonstrate any such

20 similar violation occurred here since, as discussed above, petitioner's sentence has

21 in no manner been increased merely because he has been required to serve his

22 determinate sentences before his indeterminate sentence.  Moreover, petitioner has

23 not identified, and this Court is unaware of, any clearly established federal law

24 requiring state prison sentences to be served in any particular order when there has

25

---

26         [17]To the contrary, "a state court's interpretation of state law, including one announced on
27 direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."
   <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per curiam); <u>Medley v. Runnels</u>, 506 F.3d 857, 862
28 (9th Cir. 2007) (en banc), <u>cert. denied</u>, 552 U.S. 1316 (2008).

1   been absolutely no showing that the order in which the sentences will be served

2   has any effect on the overall length of an inmate's incarceration.  See

3   United States v. Markus, 603 F.2d 409, 414 (2d Cir. 1979) ("A mere change in the

4   order in which consecutive sentences of identical length are to be served cannot

5   constitute an enhancement of punishment" in violation of due process); Sterling v.

6   Hood, 2007 WL 4169020, *7 (D. Col. Nov. 20, 2007) (habeas petitioner was not

7   denied due process of law and was not entitled to relief when United States

8   Bureau of Prisons revised the order in which petitioner was to serve his offenses

9   when petitioner "failed to show that the recalculation created a longer sentence"

10  and petitioner "was not injured by th[e] recalculation. . . .").  In the absence of any

11  such Supreme Court authority, the California Supreme Court's rejection of Ground

12  Three cannot be contrary to, or involve an unreasonable application of, "clearly

13  established" Supreme Court authority.[18]  See Musladin, 549 U.S. at 77 ("Given the

14  lack of holdings from this Court regarding the [issue in dispute,] it cannot be said

15  that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'")

16  (quoting 28 U.S.C. § 2254(d)(1)); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir.) ("If

17  no Supreme Court precedent creates clearly established federal law relating to the

18  legal issue the habeas petitioner raised in state court, the state court's decision

19  cannot be contrary to or an unreasonable application of clearly established federal

20  law.") (citation omitted), cert. denied, 543 U.S. 1037 (2004).

21          For all these reasons, the First Amended Petition does not merit federal

22  habeas relief and should be denied.

23

24          [18]Even if there were a basis to grant the First Amended Petition and rearrange the order of
    petitioner's sentences, the Court cannot discern any benefit for petitioner in so doing.  Petitioner
25  would still be required to serve a determinate sentence of 42 years (less credits) and an
    indeterminate sentence, and it is pure speculation as to any effect rearranging the order of the
26  sentences would have upon petitioner's indeterminate sentence.  See Van Geldern v. Field, 498
    F.2d 400, 403 (9th Cir. 1974) ("A federal judge may, in his discretion, refuse to entertain a
27  petition for a writ of habeas corpus should he feel that granting the writ will not significantly
    affect the position of the petitioner.").
28

1  **V.     RECOMMENDATION**

2          IT THEREFORE IS RECOMMENDED that the District Judge issue an

3  Order:  (1) approving and adopting this Report and Recommendation; and

4  (2) directing that Judgment be entered denying the operative First Amended

5  Petition and dismissing this action.

6  DATED:   March 1, 2011

7

8                                                         _____/s/_____

9                                                         Honorable Jacqueline Chooljian
                                                          UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28